## McKINNEY v. ROSENBAND and another.

(*Circuit Court, S. D. New York.* May 19, 1885.)

FRAUD ON CREDITORS—DIVERSION OF PARTNERSHIP FUNDS.

Mercantile partners, though knowing that they are in some difficulty, so long as they have a reasonable expectation of extricating themselves, cannot be charged with a fraudulent diversion of their property from firm creditors, for simply drawing money upon private account, within small and reasonable limits, whether for the payment of their individual expenses, or the payment of their honest individual obligations.

Motion to Vacate Attachment.

*S. F. Kneeland,* for plaintiff.

*Angel & Ward,* for defendants.

BROWN, J. The defendants, being in business as copartners under the name of J. & B. Rosenband, on the third of January, 1885, made a general assignment for the benefit of their creditors. In this action, brought upon partnership claims, the plaintiff, on the twelfth of February, 1885, obtained an attachment in the state court against the property of both defendants, on the ground that they had "assigned, secreted, and disposed of property with intent to defraud their creditors." The suit having been removed into this court, a motion is now made to dissolve the attachment.

The only act proved, alleged to be fraudulent as to creditors, is the appropriation by Jacob Rosenband, one of the defendants, of the sum of $748.50 from the funds of the firm during the month of December, 1884, to pay an individual debt of $355, owed by him to one Bluhmberg; $300 to pay a just debt of his to his sister Jennie; and $93.50, a part of her wedding expenses. The entire drafts of the defendant Jacob Rosenband from the firm during the year, including the three items last mentioned, amount to $2,252.94. The other defendant during the year drew on individual account $2,321.03, and these drafts were not unreasonable, considering their business.

It is urged that the use of firm moneys for the payment of individual obligations is a violation of the rights of copartnership creditors in the distribution of the joint and separate estates,—a right which exists upon the equitable marshaling of assets; and that such an appropriation of the firm moneys is, therefore, legally fraudulent as to them. I have much doubt whether section 636 of the New York Code, by the words "with intent to defraud his creditors," is designed to include any such injury to the mere equitable rights of the firm creditors prior to a condition of known and acknowledged insolvency, or prior to some act, such as an assignment of their property, which in itself calls for an equitable marshaling of assets as between the joint and individual creditors. Until actual insolvency arises, no such right practically exists. In the present case, it is not so clearly established that the insolvency of the firm, and its inability to continue

its business, were so far known in December, at the time when the small payments in question were made, as to justify the application of the principle 'contended for to this case. The mere fact, subsequently proved, that they were at the time insolvent, is not sufficient. Merchants, though knowing that they are in some difficulty, so long as they have a reasonable expectation of extricating themselves, cannot be charged with a fraudulent diversion of their property from firm creditors, for simply drawing moneys upon private account, within small and reasonable limits, whether for the payment of their individual expenses, or the payment of their honest individual obligations.

The attachment in this case should be dissolved.